J-S29016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF M.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 784 EDA 2021 |

Appeal from the Order Entered April 1, 2021,
in the Court of Common Pleas of Philadelphia County,
Juvenile Division at No(s): CP-51-DP-0001399-2019.

| | | |
|---|---|---|
| IN THE INTEREST OF M.H.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 785 EDA 2021 |

Appeal from the Order Entered April 1, 2021,
in the Court of Common Pleas of Philadelphia County,
Juvenile Division at No(s): CP-51-AP-0000346-2020.

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED NOVEMBER 2, 2021**

In these consolidated matters, Appellant J.S. (Father) appeals the decree issued by the Philadelphia County Court of Common Pleas terminating his rights to 20-month-old daughter, M.H.S. (the Child), pursuant to the

---

[*] Former Justice specially assigned to the Superior Court.

Adoption Act. *See* 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). Moreover, Counsel for Father has filed an application to withdraw and a brief, pursuant to *Anders v. California*, 386 U.S. 738 (1967). After review, we affirm and grant Counsel leave to withdraw.[1]

The trial court summarized the procedural and factual history of this case as follows:

> [In June] 2019, [the Philadelphia Department of Human Services (DHS)] received a [General Protective Services (GPS) Report alleging Mother gave birth to M.H.S. [two days prior] at Einstein Hospital; that the baby was born at 37 weeks gestation; that she weighed 7 pounds and 2 ounces at birth; that the baby has an Appearance, Pulse, Grimace, Activity, and Respiration (APGAR) score of 9/9; that Mother has a child who is not in her care; that Mother is currently unemployed; that Mother is currently in the 11th grade; and that Mother has been diagnosed with depression and is not in treatment nor taking medication. This Report was determined to be valid.

> [Two days after Child's birth], DHS went to the home of Mother. DHS met with Mother and Father[.] Mother confirmed the allegations listed in the GPS Report. DHS observed that the home had no furniture. Father stated that he receives Supplemental Security Income (SSI), but could not provide why he was receiving benefits, and that he worked at night. Father named his sister, L.S., as a possible resource for M.H.S.

> On June 29, 2029, DHS spoke with Child's Paternal Grandmother, D.S., who stated that she is Father's payee for his SSI benefits and that he is receiving benefits due to brain issues. Father has not provided verification of the nature of his SSI benefits to DHS.

> On September 16, 2019, an Adjudicatory Hearing was held for the Child before the Honorable Joseph Fernandes.

_____

[1] The trial court also terminated the rights of S.D. (Mother), who did not appeal.

- 2 -

The Child was Adjudicated Dependent and legal custody transferred to DHS. Placement of the Child in kinship care with L.S., Paternal Aunt. Visitation is supervised by Paternal Aunt twice a week and supervised twice a month by [Community Umbrella Agency (CUA). Grandmother may also have visitation supervised by Paternal Aunt. Forthwith medical examination and audiology appointment. Parents are referred to Family School. Father referred to the Behavioral Health System (BHS) for consultations and/or evaluations. CUA to obtain a clothing voucher. Mother referred to [Clinical Evaluation Unit (CEU)] for dual diagnosis assessment and three random [drug screens] prior to next court date. […]

On or around September 30, 2019, DHS received a report pursuant to a psychological evaluation conducted on Father by Kai Syversten, PH.D. Dr. Syversten diagnosed Father with an unspecified mental disorder and borderline intellectual function. The doctor stated that Father did not require mental health services at that time.

A hearing was held on September 30, 2019, before [the hearing officer.] […] Case continued to be linked with sibling.

A hearing was held on December 2, 2019 before [the hearing officer]. […] Child is in kinship [care].

On November 25, 2019, CUA held a Single Case Plan (SCP) meeting. Mother and Father did not participate in this meeting. The primary goal for Child was identified as Reunification. The concurrent goal identified for Child was identified as Adoption. The following objectives were outlined for Father: to ensure that Child attended all medical appointments; to provide documentation as to his SSI benefits; to comply with a CEU referral, if recommended; and to comply with an evaluation for Intellectual Disability Services (IDS), if recommended.

On January 9, 2020, a permanency review hearing was held[.] Legal custody remains with DHS, and placement continues in kinship care with Paternal Aunt[.] The court found that there had been minimal compliance with the permanency plan as to Father. Father had been offered five Family School sessions and attended two. The court ordered that all recommendations from Father's

- 3 -

psychological evaluation be implemented. Father to provide all requested SSI documents to CUA and to sign necessary consents. CUA to give Father notice of Child's medical appointments at least 72 hours prior to appointment. Father has visits with Child supervised by Paternal Aunt and as arranged. All services to Child shall continue. CUA to follow up with Aunt to investigate kinship care retro payment. […]

On May 8, 2020, CUA learned that Father attempted to contact Child via telephone but reportedly had not visited with her recently.

A permanency review hearing was held on June 10, 2020, before [a hearing officer]. Legal custody remains with DHS, and placement continues in kinship care with Paternal Aunt[.] Parent Locator Service (PLS) to be done for Mother and Father. Father to visit Child supervised by Paternal Aunt and CUA. Father to participate with Family School, with [the Achieving Reunification Center (ARC)] and comply with mental health services. Child receives [physical therapy] and [occupational therapy] and medical and dental are up to date. […]

On August 17, 2020, CUA revised the SCP. Mother and Father did not participate in this meeting. The primary goal for Child remained Reunification. The concurrent goal identified for Child remained Adoption. The objectives outlined for Father: to sign released of information and releases for specialized medical treatment for Child; to provide documentation regarding his SSI benefits; to comply with his court-ordered visitation; and to comply with parenting services through the ARC.

[…]

The first goal change/termination hearing was held on February 11, 2021[.] Legal custody remained with DHS and placement continued in Medical Foster Care[.] Father agreed to sign [voluntary relinquishment paperwork] in 10 days. Child receives [occupational therapy, physical therapy,] and speech therapy. Child may be moved prior to the next court date.

*See* Trial Court Opinion (T.C.O.), 6/9/21, at 3-7 (superfluous capitalization and citations to the record omitted).

Ultimately, Father did not relinquish his parental rights. The court held an additional hearing on April 1, 2021 to determine whether Father signed the necessary forms. He had not, nor did he participate in the hearing. The trial court then granted the petition filed by DHS and terminated Father's rights under Section 2511(a)(1), (2), (5), (8), and (b). Father appealed.

Father's Counsel has filed a petition to withdraw and a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).[2] To withdraw pursuant to *Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

> With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."

*In re J.D.H.*, 171 A.3d at 903, 907 (Pa. Super. 2017) (citations omitted).

---

[2] This Court extended the *Anders* principles to appeals involving the termination of parental rights. *In re X.J.*, 105 A.3d 1, 3 (Pa. Super. 2014) (citation omitted).

Additionally, Counsel must file a brief that meets the following requirements established by the Pennsylvania Supreme Court in **Santiago**:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**In re Adoption of M.C.F.**, 230 A.3d 1217, 1219 (Pa. Super. 2020) (citation omitted).

Preliminarily, we find that Counsel has substantially complied with the technical requirements to withdraw.[3] **See Commonwealth v. Reid**, 117 A.3d 777, 781 (Pa. Super. 2015) (observing that substantial compliance with the **Anders** requirements is sufficient).

In addition to verifying that Counsel substantially complied with **Anders** and **Santiago**, this Court also must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked

_____

[3] We note, however, that it was originally unclear whether Counsel sent the **Anders** Brief to Father and advised him of his rights. Counsel's original application to withdraw only stated that notice had been sent to "Mother, T.M.G." rather than Father. We also observe that the mother in this case was S.D., not T.M.G. Subsequently, this Court issued a *per curiam* order on August 10, 2020, directing Counsel to file an amended petition to withdraw and to properly advise Father of his rights. On August 14, 2021, Counsel complied with our order.

by counsel." ***Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted). ***Flowers*** does not require us "to act as counsel or otherwise advocate on behalf of a party." ***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*). "Rather, it requires us only to conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." ***Id.*** Traditionally, we would start our review by giving "a most generous reading and review of 'the case' as presented in the entire record with consideration first of issues raised by counsel." ***See id.*** (citing ***Anders***, 386 U.S. at 744).

Before we conduct our independent review, we first address the issues Counsel presents in the ***Anders*** Brief. ***See M.C.F.***, 230 A.3d at 1219. The two issues presented are as follows:

> 1. Whether the trial court committed reversible error, when it involuntarily terminated Father's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8).

> 2. Whether the trial court committed reversible error when it involuntarily terminated [Father's[4]] parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of the Child as required by the Adoption Act, 23 Pa.C.S.A. § 2511(b).

***Ander's*** Brief at 8 (footnote added).

_____

[4] In another typo, Counsel references "Mother" instead of "Father."

We review these issues mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Instantly, the trial court terminated Father's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b). We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section

2511(b), in order to affirm. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Moreover, we may uphold a termination decision if any proper basis exists for the result reached. ***In re C.S.***, 761 A.2d 1197, 1201(Pa. Super. 2000) (*en banc*).

Father's first appellate issue corresponds with the specific grounds for termination under Section 2511(a). His other appellate issue concerns the second element of the bifurcated termination analysis, Section 2511(b). We begin our discussion with a review of the first prong of the termination analysis under Section 2511(a). As we need only to agree with the trial court as to one subsection of Section 2511(a), we analyze whether DHS properly established grounds under Section 2511(a)(2). That section provides in relevant part:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be

without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019) (citation omitted). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id*.

Here, Child has been out of Father's care for approximately 18 months. During that time, Father has done virtually nothing toward accomplishing his SCP objectives. He attended some parenting sessions at the Family School and at ARC, but never completed either course. One caseworker testified that Father informed ARC that he did not have to attend parenting classes because he signed over his parental rights. Father also did not visit Child, even though she was placed with Paternal Aunt through most of the dependency case, nor did Father seek to be involved in Child's medical care. Finally, Father did not cooperate with DHS, as he refused to supply the agency with his address or the documentation regarding his SSI benefits. Thus, we conclude the trial court properly determined DHS met its burden under Section 2511(a)(2), and we agree with Counsel that this claim has no merit.

Having established the first prong of the termination analysis, we turn now to the second. In the second *Anders* issue, Father argues the trial court abused its discretion when it found that termination best served Child's needs and welfare. Section 2511(b) provides:

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(b).

This Court has explained that:

[S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In ***In re C.M.S.,*** 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa. Super. 2010).

Concerning the bond, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. ***See C.M.K.***, 203 A.2d at 264 (citation omitted); ***see also K.Z.S.***, 946 A.2d at 764 (holding there was no bond worth preserving where the child

had been in foster care for most of the child's life, which caused the resulting bond to be too attenuated). We add, the court is not required to use expert testimony to resolve the bond analysis but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). Finally, we emphasize that "[w]hile a parent's emotional bond with her and/or her child is a major aspect of the § 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted).

Here, there was no evidence a bond existed, much less a beneficial one. The caseworker also testified that termination would not cause Child any harm. Child has been out of Father's care for almost her entire life. As Father refused to visit Child or take interest in her development, it was not an abuse of discretion for the trial court to determine that termination would best serve Child's needs and welfare. We agree with Counsel that this issue is also devoid of merit.

Finally, we must conduct our independent review to discern whether there are any additional, non-frivolous issues overlooked by counsel, pursuant to *Flowers*, 113 A.3d at 1250. In our review, we observe that Counsel has filed a consolidated Brief to address two separate appeals, one from Father's adoption docket (governing the termination decree), but also a second from the juvenile docket, which suggests that Counsel meant to raise a separate issue concerning Father's dependency case. Yet, Counsel only presented the

above terminations questions. This has given us pause, because Counsel also seems to have indicated the existence of one or more dependency issues.

For instance, in the "summary of statement in support of withdrawal of counsel" section of the ***Anders*** Brief, Counsel seemingly identified a dependency issue, which Counsel believes could support Father's appeal:

> whether they [*sic*] were reasonable efforts made to reunite the ***mother*** with ***her*** child[.]

***See Anders*** Brief at 13 (emphasis added).

Again, Counsel's reference to "the mother" suggests a copy-and-paste error when Counsel created the ***Anders*** Brief. This would explain why Counsel's original application to withdraw included the averment that notice had been send to "Mother, T.M.G." even though the mother in this case was S.D.

In addition to the reasonable efforts issue, Counsel also alludes to a goal-change challenge under the Juvenile Act, 42 Pa.C.S.A. § 6351. ***See Anders*** Brief at 22. Encapsulated in Counsel's argument under Section 2511(b), Counsel suggests the trial court erred when it changed the goal of the dependency proceedings from reunification to adoption. ***See id.*** Indeed, the court separately addressed the goal-change question its Rule 1925(a) opinion. ***See*** T.C.O. at 13-14. Thus, apart from the termination issues

formally raised in the *Anders* Brief, the record suggests there are as many as two dependency issues which Counsel meant include, but did not.[5]

We note with disapproval the ambiguities contained in Counsel's *Anders* Brief. We appreciate Counsel resorted to the procedures afforded by *Anders* and *Santiago* after concluding that a traditional appeal could not be brought in good conscience; and we also understand that typos occur when working from helpful templates. Be that as it may, Counsel has a professional responsibility to ensure the rights of appellants are protected, particularly in cases involving the termination of parental rights. *See In re Adoption of C.M.*, 255 A.3d 343, 362 (Pa. 2021) ("We acknowledge the solemn reality that a decree terminating parental rights is widely regarded as the civil law equivalent to the death penalty, forever obliterating the fundamental legal relationships between parent and child.") (citation omitted).

When we discover an overlooked issue of arguable merit, normally we would remand for an advocate's brief. *See M.C.F.* 230 A.3d at 1219 (holding that when counsel does not fulfill the technical requirements of *Anders*, this Court will deny the petition to withdraw and remand the case with appropriate instructions, including the filing of an advocate's brief in support of the appellant). Here, however, an advocate's brief is unnecessary, because our decision to affirm the termination order renders moot Father's challenges from the dependency case. *See Interest of D.R.-W*, 227 A.3d 905, 917 (Pa.

---

[5] We also observe that Counsel only raised the termination issues in its concise statement of matters complained of on appeal, which was filed contemporaneously with the notices of appeal. *See* Pa.R.A.P. 1915(a)(2)(i).

Super. 2020) (citing **In re D.A.**, 801 A.2d 614, 616 (Pa. Super. 2002) ("An issue before a court is moot if ruling upon the issue the court cannot enter an order that has any legal force or effect.")).[6]

In sum, the termination issues explicitly raised in the **Anders** Brief do not entitle Father to relief.  To the extent Counsel also meant include the dependency issues in the **Anders** Brief, we conclude they are moot.  Finally, our independent review under **Flowers** has not yielded any other non-frivolous issues.

Order affirmed.  Application to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/02/2021

---

[6] Moreover, our Supreme Court has held that a court considering a termination petition is not required to consider the reasonableness of the efforts offered by the agency to reunify the parent and child.  **See In re D.C.D.**, 105 A.3d 662, 675-76 (Pa. 2014).  Rather, when an agency has failed to make reasonable efforts, the court's remedy is to render this finding on the record, which imposes a financial penalty on the agency. **See id**.